UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDELL LOWELL JAMES TURNER,<br><br>Plaintiff,<br><br>v.<br><br>ADALBERTO ALBERTO, et al.,<br><br>Defendants. | Case No. 3:20-cv-02980-JD<br><br>**ORDER RE MOTIONS TO REMAND AND DISMISS**<br><br>Re: Dkt. Nos. 13, 20 |

Pro se plaintiff Randell Turner filed a complaint in the California Superior Court for the County of Alameda alleging a variety of claims relating to his arrest during a welfare and domestic violence check at his residence by Union City police officers. Dkt. No. 1 Exh. A. He sued the City of Union City and several individual patrol officers and sergeants, a detective, a former police chief, and others. Defendants removed to this Court on the basis of federal question jurisdiction because Turner alleged claims for civil rights violations under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1441. Dkt. No. 1. Turner filed several duplicative requests to remand the case to the Superior Court, *see* Dkt. Nos. 13, 15, 23, which the Court treats as one remand motion. Defendants opposed a remand, and filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 10.

A remand is denied, and the Section 1983 claims are dismissed with leave to amend. The Court declines to take up the supplemental California state law claims until a claim sufficient to establish federal jurisdiction is plausibly alleged.

I. **REMAND**

The Court has discussed in detail in other cases the general standards governing removal and remand, and those standards apply in full force here. *See California v. AbbVie, Inc.*, 390 F.

1  Supp. 3d 1176, 1180 (N.D. Cal. 2019). Turner expressly alleged three civil rights claims for
2  violations of the First, Fourth, and Fourteenth Amendments under Section 1983. Dkt. No. 1 Exh.
3  A at ¶¶ 66-85. Consequently, the complaint on its face presents a federal question that supported
4  removal. *See* 28 U.S.C. §§ 1331, 1367(a).

5  Turner's main argument for requesting a remand is his belief that the removing defendants
6  were not "officially" added as parties, and so could not have removed the case when they did.
7  Dkt. No. 13 at 9. But Turner had served all of the removing defendants, and received a Notice of
8  Acknowledgment and Receipt executed on their behalf, as of April 20, 2020. *Id.* at 6-7.
9  Defendants filed the notice of removal on April 30, 2020, 10 days after they were served. Dkt.
10 No. 1. Turner also says that defendants jumped the gun by removing on the basis of a second
11 amended complaint, which the parties agree was the first version of the complaint to establish
12 grounds for removal (*see Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1179 (9th Cir. 2015)),
13 before he had permission from the Superior Court to file it. The record shows differently.
14 Defendants removed after the Superior Court issued a tentative ruling granting Turner leave to file
15 the second amended complaint, which defendants did not contest. Dkt. No. 27 Exh. K[1]; *see also*
16 California Rules of Court 3.1308(a)(1) and Alameda County Superior Court Local Rule 3.30(d)
17 (uncontested tentative rulings automatically become final rulings of the court).

18 Consequently, removal was done providently and with jurisdiction. Remand is denied.
19 Defendants' ancillary evidentiary objections are denied as moot. Dkt. No. 32.

20 **II.   MOTION TO DISMISS**

21 For Turner's Section 1983 claims, "[w]hile the Court must construe *pro se* complaints
22 liberally, a plaintiff is still required to allege 'enough facts to state a claim to relief that is plausible
23 on its face.'" *Nguyen Gardner v. Chevron Capital Corp.*, No. 15-cv-1514-JD, 2015 WL
24 12976114, at *1 (N.D. Cal. Aug. 27, 2015) (citing *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir.
25 2010) (internal quotation marks and citations omitted)); *see also Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] The tentative ruling and related court filings are attached in a request for judicial notice. Dkt. No. 27. The Court grants the request for these materials. *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018).

678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The second amended complaint has three civil rights claims that overlap substantially. *See* Dkt. No. 1., Exh. A ¶¶ 66-85. Reading the allegations liberally, the Court construes the gravamen of the claims against the individual defendants to be that they subjected him to a search and seizure without probable cause, and maliciously prosecuted him. The claims against Union City are that it failed to adequately train and supervise its police officers. These are said to amount to violations of the Fourth and Fourteenth Amendment. Turner also makes a passing reference to freedom of speech under the First Amendment, but this theory is devoid of any factual development or support, *see e.g., id.* ¶ 75(c), and so will not be considered further here.

The second amended complaint fails to allege enough facts to plausibly state a Section 1983 violation. To start with the Fourth Amendment claim, Turner alleges that the police came to his home and "requested" to come in. *Id.* ¶ 16. He denied the request. *Id.* After that, he says the police subjected him to a "5-hour ordeal" during which the police fired their weapons at him multiple times, released a K-9 police dog on him, and tried to pepper spray Turner's own dog, "Smokey," among other alleged events. *Id.* ¶¶ 18-29. Turner was not injured during any of this. *Id.* ¶ 28. He eventually voluntarily "exited his home and cooperated with officers." *Id.* ¶ 30.

Turner's main Fourth Amendment contention is that the police lacked probable cause or a warrant to approach his home and engage with him. *See, e.g., id.* ¶¶ 30, 35. The problem with this theory is that Turner was arrested on several counts of false imprisonment of his wife and children, spousal abuse, resisting arrest, and other charges. *See* Dkt. No 11 Exh. A at 78-80.[2] Turner appeared at a preliminary hearing before the Superior Court, and was represented by a lawyer. *Id.* at 3. Several police witnesses testified about the events leading up to Turner's arrest. *Id.* at 27. Among other testimony, the police witnesses said that Turner's mother dialed 911 for help because her daughter-in-law -- Turner's wife -- had called her during an argument with

---

[2] The evidence of the state criminal proceedings comes from court transcripts and records attached in the request for judicial notice. Dkt. No. 11. The Court grants the request for these materials. *See Khoja,* 899 F.3d at 999. Page numbers for the hearing transcript are to the transcript pagination, and not the ECF pages.

Turner, and she had heard Turner threaten to kill his wife and put her in the trunk of their car. *Id*. at 29-30. Officers who went to the scene were advised of possible firearms in the house with Turner. *Id*. at 36. When officers knocked on the door of Turner's house and identified themselves, Turner yelled obscenities and said "today is a good day to die," and "I'm ready to die today, and I'm willing -- if I die, someone is going with me." *Id*. at 51. A police hostage negotiator became involved, and eventually persuaded Turner to let his wife out of the house. *Id*. at 67. Officers saw and photographed her injuries, which included a "softball sized" knot on her forehead, and "significant bruising on her arms and legs," *id*. at 55, and described her as shaking with fright, *id*. at 42, 61. Turner's children were also allowed to walk out of the house. An emergency room nurse who examined Turner after his arrest testified that Turner threatened to kill him, and kicked him in the chest. *Id*. at 8-9. A treating physician "ordered a 5150," which meant that Turner was placed on an involuntary hold for psychiatric care because he was a threat to himself or others. *Id*. at 11-12.

On the basis of this and other testimony, the Superior Court determined there was evidence to support charges of spousal abuse, false imprisonment, resisting arrest, and other charges. *Id*. at 78-80. Specifically, the court found "sufficient cause to believe the felony offenses in counts 1, 2, 7, 8, 9, 10, and 11 have been committed and there is sufficient cause to believe the defendant is guilty of the same." *Id*. at 80.

The probable cause determinations at the preliminary hearing bar Turner from relitigating them here in a Section 1983 claim. The Ninth Circuit concluded as much in an unpublished opinion that involved similar circumstances. *See Patterson v. City of Yuba City*, 748 Fed. Appx. 120, 121 (9th Cir. 2018). The Court reaches the same conclusion here, and the record provides no basis for finding an exception to preclusion.

So too for the malicious prosecution theory. The preliminary hearing determinations amounted to a prima facie showing of probable cause, which the complaint does not rebut with plausible allegations that Turner's prosecution was the product of knowingly false accusations or similar wrongful conduct. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). In addition, Turner pleaded no contest to resisting arrest and misdemeanor threats, which calls the

4

plausibility of the malicious prosecution claim into further doubt. *See id*. at 1068 (citing *Heck v. Humphrey*, 512 U.S. 477, 484-85 (1994)).

For the municipal liability claims, Turner has not alleged a custom, pattern, or practice that might support a claim against Union City. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The second amended complaint does not state facts plausibly establishing that Turner's injuries derived from impermissible practices or policies maintained by Union City or its police department. It also does not plausibly allege inadequate training or supervision. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011)*; City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).

## CONCLUSION

The federal claims are dismissed. In light of the state criminal proceedings, the Court has some doubt that Turner can successfully amend them, but he may file an amended complaint that is consistent with this order by February 26, 2021. The complaint may not add any new parties or claims without the Court's prior approval. Failure to meet this deadline, or file a new complaint consistent with this order, will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: January 26, 2021

JAMES DONATO
United States District Judge